UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

,

v.                                              17-CR-147
                                                 DECISION AND ORDER
TORRI McCRAY,

      Defendant.


The defendant was indicted in August 2017 on charges that he violated the Controlled Substances Act, as amended ("the Act"), by possessing with intent to distribute and distributing butyryl fentanyl. Docket Item 1. The Act provides that it is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). The Act also provides an enhanced penalty for violations of § 841(a) "involving . . . 10 grams or more of a mixture of substance containing a detectable amount of any analogue of [fentanyl]."[1] *Id.* § 841(b)(1)(B)(vi).

The question before the Court is whether this enhanced penalty applies here. More specifically, the parties dispute the meaning of the term "analogue" under § 841(b)(1)(B)(vi) and whether butyryl fentanyl is "any analogue of" fentanyl under the specific penalty provision. Although the Act defines the term "controlled substance analogue," *id.* §802 (32), it does not define the term "analogue" or "any analogue of

---

[1] The Act uses the chemical term for fentanyl: "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide." See 21 U.S.C. § 841(b)(1)(B)(vi).

fentanyl." And by defining "controlled substance analogue" without defining "analogue," the drafters created a thorny definitional problem.

Under the Act, the term "controlled substance analogue" excludes "a controlled substance." *Id.* Butyryl fentanyl is a controlled substance. *See* Schedules of Controlled Substances: Temporary Placement of Butyryl Fentanyl and Beta-Hydroxythiofentanyl Into Schedule I, 81 Fed. Reg. 29492 (May 12, 2016); Schedules of Controlled Substances: Placement of Butyryl Fentanyl and U-47700 Into Schedule I, 81 Fed. Reg. 17486 (Apr. 20, 2018) (amending 21 C.F.R. § 1308.11). Therefore, butyryl fentanyl is not a "controlled substance analogue." 21 U.S.C. § 802(32). Does that mean it is not an "analogue of fentanyl" because fentanyl is itself a controlled substance? Although the result may seem counterintuitive, this Court agrees with the government and concludes that although butyryl fentanyl is not a controlled substance analogue, it is an analogue of fentanyl. Therefore, the Act does not preclude a controlled substance such as butyryl fentanyl from being charged as an "analogue of fentanyl" under § 841(b)(1)(B)(vi).

## **BACKGROUND**

On August 15, 2017, McCray was charged in a three-count indictment. Docket Item 1. Count one, which is not at issue here, charges him with possessing with intent to distribute and distributing a quantity and mixture containing fentanyl, butyryl fentanyl, furanyl fentanyl, and U-47700. *Id.* Counts two and three charge him with possessing with intent to distribute and distributing "10 grams or more of a mixture and substance containing butyryl fentanyl, . . . an analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl)," in violation of 21 U.S.C. § 841(a)(1) and

2

§ 841(b)(1)(B). *Id.* On August 17, 2017, this Court referred the matter to United States Magistrate Judge Jeremiah J. McCarthy for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B). Docket Item 2.

In March 2018, McCray moved to dismiss counts two and three, contending that because of the definitional issue described above, the indictment fails to state an offense that falls within the scope of the specified provision of the Act. Docket Item 25. On May 22, 2018, Judge McCarthy issued a Report and Recommendation ("R&R"), recommending that McCray's motion be granted in part and denied in part. Docket Item 35 at 4. Judge McCarthy agreed with the defendant that because butyryl fentanyl is a controlled substance and because controlled substances are expressly excluded from the definition of "controlled substance analogue," butyryl fentanyl was not an "analogue of fentanyl," and the enhanced penalty under 21 U.S.C. § 841(b)(1)(B)(vi) therefore did not apply. On June 7, 2018, the government timely objected to the R&R, Docket Item 39; on June 21, 2018, the defendant responded, Docket Item 41; and on June 22, 2018, the government replied, Docket Item 41. The government supplemented its response on July 17, 2018, Docket Item 43, and this Court heard oral argument on September 6, 2018, Docket Item 46.

## **ANALYSIS**

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A district court must conduct a de novo review of those portions of a magistrate judge's recommendation to which an objection is raised. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). This Court therefore reviews the R&R de novo.

## I. INTERPRETATION OF TERM "ANY ANALOGUE" AS USED IN 21 U.S.C. § 841(b)(1)(B)(vi)

21 U.S.C. § 841(b)(1)(B)(vi) provides an enhanced penalty in the case of a violation of § 841(a) "involving . . . 10 grams or more of a mixture or substance containing a detectable amount of any analogue of [fentanyl]." The defendant contends that under this statute, butyryl fentanyl is not, and cannot be, "any analogue of [fentanyl]." *See id.*

To interpret a statute, this Court "'necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there.'" *United States* v. *Maynard*, 743 F.3d 374, 381 (2d Cir. 2014) (quoting *Dobrova* v. *Holder*, 607 F.3d 297, 301 (2d Cir. 2009)). "In conducting such an analysis, [the court will] 'review the statutory text, considering the ordinary or natural meaning of the words chosen by Congress, as well as the placement and purpose of those words in the statutory scheme.'" *Id.* (quoting *Dobrova*, 607 F.3d at 301). "[W]hen a statute is ambiguous[,] . . . deals with especially complex matters," or otherwise gives a court reason "to corroborate and fortify [its] understanding of the text," the court also will look at relevant legislative history. *Dig. Realty Tr., Inc.* v. *Somers*, 138 S.Ct. 767, 783 (2018) (Sotomayor, J., concurring).

### A. Plain Meaning of the Text

The defendant contends that the Act's explicit definition of "controlled substance analogue," 21 U.S.C. § 802 (32), defines "analogue" as well. As noted above, the Act excludes from the definition of "controlled substance analogue" any "controlled substance." *Id.* § 802(32)(C)(i). The term "controlled substance" is defined as "a drug or other substance, or immediate precursor" scheduled under the Act. Butyryl fentanyl now has indisputably been scheduled as a controlled substance under the Act. *See*

Schedules of Controlled Substances: Temporary Placement of Butyryl Fentanyl and Beta-Hydroxythiofentanyl Into Schedule I, 81 Fed. Reg. 29492 (May 12, 2016); Schedules of Controlled Substances: Placement of Butyryl Fentanyl and U-47700 Into Schedule I, 81 Fed. Reg. 17486 (Apr. 20, 2018) (amending 21 C.F.R. § 1308.11). Thus, the defendant contends, butyryl fentanyl is not an analogue of fentanyl because it is a scheduled controlled substance, which is excluded from the definition of "controlled substance analogue."

"In general, 'statutory definitions control the meaning of statutory words.'" *Upstate Citizens for Equality, Inc.* v. *United States*, 841 F.3d 556, 575 (2d Cir. 2016) (quoting *Burgess* v. *United States*, 553 U.S. 124, 129 (2008)). When a term is not defined in a statute, however, the term is given its ordinary meaning. *Encino Motorcars, LLC* v. *Navarro*, 138 S.Ct. 1134, 1140 (2018). In this instance, the statutory term used in § 841(b)(1)(b)(vi) is "any analogue of [fentanyl]," not "controlled substance analogue." The Act does not define the term "analogue" or "any analogue of fentanyl." *See* 21 U.S.C. § 802. Therefore, this Court considers the term's plain and ordinary meaning.

The ordinary meaning of the term "analogue" supports the government's reading of the statute. In the chemistry context relevant here, the term analogue means "a chemical compound structurally similar to another but differing often by a single element of the same valence and group of the periodic table as the element it replaces." *Analogue*, WEBSTER'S NEW COLLEGIATE DICTIONARY (1985). Nothing in the dictionary definition of analogue suggests that butyryl fentanyl cannot be an analogue of fentanyl; in fact, the chemistry of the two substances suggests that it is. Thus, according to the

plain and ordinary meaning of the term "analogue," the government may prove that butyryl fentanyl is an analogue of fentanyl.

The defendant's argument to the contrary has some intuitive appeal to it. After all, fentanyl is a controlled substance and so the government's argument leads to the conclusion that an analogue of a controlled substance (that is, fentanyl) is not a "controlled substance analogue." That is a conclusion only a lawyer can love. But this Court is convinced that it is the correct one, based on the science, based on the dictionary definition of analogue, and based on the fact that "controlled substance analogue" is a term of art under the statute. What is more, other canons of construction lead to that same conclusion.

B. Avoiding Unreasonable Results

"Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible." *American Tobacco Co.* v. *Patterson*, 456 U.S. 63, 71 (1982). An examination of the defendant's interpretation of the statute within the broader context of the Act demonstrates that it would create issues and distinctions in ways that Congress could not have reasonably intended.

The Act "identifies a category of substances substantially similar to those listed on the federal controlled substance schedules, 21 U.S.C. § 802(32)(A), and then instructs courts to treat those analogues, if intended for human consumption, as controlled substances listed on schedule I for purposes of federal law, § 813." *McFadden* v. *United States*, 135 S.Ct. 2298, 2302 (2015). In other words, it is unlawful to "knowingly or intentionally . . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance," 21 U.S.C. §

6

841(a)(1), or a controlled substance analogue, regardless of whether that analogue has yet been administratively scheduled as a controlled substance. *Id.* § 813.

As codified under 21 U.S.C. § 841(b)(1)(A) and §841(b)(1)(B), the Act specifies penalty levels based on the amount and type of the controlled substance at issue. These penalties apply to substances including heroin, cocaine, phencyclidine (PCP), lysergic acid diethylamide (LSD), fentanyl or analogues of fentanyl, marijuana, and methamphetamine, with graduated sentences based on the quantity of the substance involved. 21 U.S.C. § 841(b)(1).

The Act specifies the same enhanced penalty level for violations involving forty grams or more of mixtures or substances containing fentanyl and for violations involving ten grams or more of mixtures or substances containing fentanyl analogues. *Id.* §841(b)(1)(B)(vi).[2] One explanation for the differing treatment is a congressional determination that fentanyl analogues tend to be more potent than fentanyl. *See* House Judiciary Committee Report accompanying H.R. 5246, H.R. REP. NO. 99-848, at 4 (1986) ("Designer drugs such as the fentanyl analogues have resulted in over one hundred drug overdoses because in some cases they are as much as 3000 times more potent than heroin."). With this context in mind, the defendant's contention—that because butyryl fentanyl has been scheduled as a controlled substance, it may not be considered a fentanyl analogue under §841(b)(1)(B)(vi)—results in a distinction that Congress could not have intended.

---

[2] It also imposes the same penalty for violations involving four hundred grams or more of fentanyl and one hundred grams or more of any fentanyl analogue. 21 U.S.C. § 841 (b)(1)(A)(vi).

7

Consider two possible scenarios. In the first, a fentanyl analogue, such as butyryl fentanyl, has not been designated as a controlled substance. In this scenario, the manufacture, distribution, or possession with intent to distribute the substance violates the Act under § 813 because the substance meets the definition of "controlled substance analogue." *See* § 802(32). The defendant's reasoning and interpretation of the statute would put the stricter penalties under §841(b)(1)(B)(vi) at play because the substance is an analogue of fentanyl that has not been scheduled as a controlled substance.

In the second scenario, the Administrator of the Drug Enforcement Administration has exercised his authority under § 811 to add butyryl fentanyl to the schedule of controlled substances because he found "that such a drug or substance has a potential for abuse" and because he made the other necessary statutory findings. *See id.* § 811. According to the defendant's interpretation of the statute, the Administrator's recognition of butyryl fentanyl as a controlled substance has the effect of eliminating the enhanced penalty under §841(b)(1). In other words, the defendant's interpretation renders meaningless the enhanced penalty provisions for fentanyl analogues that have been scheduled as controlled substances. And this is so even though scheduling a substance as a controlled substance, if anything, recognizes the potential for the substance's abuse and despite Congress's intent to protect the public by enhancing penalties for possessing and distributing such substances.

Congress could not have intended such a perverse outcome: that the enhanced penalty provisions for fentanyl analogues apply only when the Administrator has not yet recognized the need to schedule the substances as controlled substances.

"[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *United States* v. *Messina*, 806 F.3d 55, 70 (2d Cir. 2015) (quoting *Griffin* v. *Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982)). Here, a non-absurd interpretation not only is available but, as discussed above, is consistent with the plain meaning of the statutory text.

### C. Legislative History

Finally, the ambiguity that gives rise to this complex discussion makes legislative history fair game. And a brief examination of the legislative history of the statute underlying this complex matter corroborates and fortifies this Court's understanding of the statutory text.

The requirement that a controlled substance analogue be treated as a controlled substance, the definition of "controlled substance analogue," and the enhanced penalty provisions applicable to fentanyl analogues all were amendments added to the Act in the Anti-Drug Abuse Act of 1986. *See* Pub. L No. 99-570 §§ 1002 (amending § 841(b)(1)), 1202 (inserting § 813), 1203 (inserting definition of controlled substance analogue). The Anti-Drug Abuse Act of 1986 was omnibus legislation that included a number of legislative changes. *See id.* Subtitle A of the Anti-Drug Abuse Act of 1986 included the Narcotics Penalties and Enforcement Act of 1986, which added the enhanced penalties for fentanyl analogues. *See id.* at §§ 1001-1009. Subtitle E of the Anti-Drug Abuse Act of 1986 included the Controlled Substance Analogue Enforcement Act of 1986, which added the provisions regarding the treatment of "controlled substance analogues." *See id.* at §§ 1201-1204.

9

Before it was included in the House's version of the Anti-Drug Abuse Act of 1986, the House Judiciary Committee approved a separate bill—the Narcotic Penalties and Enforcement Act of 1986—which contained language substantially similar to what was ultimately enacted as part of the Anti-Drug Abuse Act.  H.R. 5394, 99th Cong., (1986).  The House Judiciary Committee Report accompanying that legislation explained that the term of "fentanyl analogue"

> does not include fentanyl, *nor does it include controlled substance analogues* (as defined in the Designer Drug Enforcement Act of 1986) *which may be analogues of fentanyl*.

H.R. REP. NO. 99-845, at 17 n.2 (emphasis added).[3]  Thus, the Committee's report demonstrates that when the statute was enacted, Congress considered the term "fentanyl analogue" to be different from the more generalized term "controlled substance analogue" even though fentanyl is a controlled substance.

In other words, the legislative history shows that Congress considered a controlled substance analogue and an analogue of fentanyl to be definitionally and conceptually different.  Again, that is a distinction that only a lawyer—or, perhaps, a legislator—can love.  But it is a distinction that Congress intended.

## **CONCLUSION**

For the foregoing reasons, the Court concludes that 21 U.S.C. § 841(b)(1)(B)(vi) permits the government to prove that butyryl fentanyl is an analogue of fentanyl.

---

[3] The Designer Drug Enforcement Act of 1986, H.R. 5246 was a bill that was reported to the House by the House Judiciary Committee in 1986.  Like the final omnibus Anti-Drug Abuse Act of 1986 that was ultimately signed into law, it would have amended the Controlled Substances Act to penalize the knowing or intentional manufacture, distribution, or possession of a controlled substance analogue.

Therefore, the Court respectfully rejects Judge McCarthy's recommendation to grant the defendant's motion in part. The defendant's motion to dismiss counts 2 and 3, Docket Item 25, is DENIED. The case is referred back to Judge McCarthy for further proceedings consistent with the referral order of August 17, 2017, Docket Item 2.

SO ORDERED.

Dated: September 28, 2018
Buffalo, New York

*s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE